1  Ronald Mazzaferro
2  P. O. Box 536
   El Verano, CA 95433
3  (707) 703 6976

4

5  Plaintiff in Pro Per
6

7
                UNITED STATES BANKRUPTCY COURT
8               NORTHERN DISTRICT OF CALIFORNIA
9                  SAN FRANCISCO DIVISION

10 ROBERT FRANKLIN VAN          ) Bankruptcy Case #: 12-32655 HLB
   ZANDT,                        )
11                               )
          Debtor                 )
12 _____      )_____
   RONALD MAZZAFERRO,            ) Adversary Proceedings Case #:
13        Plaintiff              )
                                 ) **1.   BANKRUPTCY FRAUD**
14        v.                     ) **2.   BREACH OF TRUST**
                                 ) **3.   BREACH OF FIDUCIARY DUTY**
15 WILLIAM PARISI,               ) **4.   BREACH OF CONTRACT**
16        Defendant              )      **(INCLUDES FEDERAL TAX FRAUD)**
                                 ) **5.   MALICIOUS CRIMINAL**
17 EDITH MAZZAFERRI,             )      **PROSECUTION**
18        Defendant              ) **6.   VIOLATION OF RULES OF**
                                 )      **PROFESSIONAL CONDUCT**
19 EDITH MAZZAFERRI,             )
   As Trustee of Various Mazzaferri Trusts, )
20                               )
   RUSSELL STANALAND,            )**THIS IS A COMBINATION OF "CORE",**
21 Party In Interest As A Defendant in Related ) **"NON CORE" AND "RELATED TO"**
   United States District Court, )**PROCEEDINGS**
22 Northern District of California )
   case 3:11-cv-04097 SI         )
23                               )
                                 )
24 LYNN SEARLE,                  )
          Defendant              )
25                               )
                                 )
26 WILLIAM SHEA,                 )
          Defendant              )
27 MANSUETTO ANTHONY LENCI,      )
                                 )
28
   Mazzaferro Lawsuit
                                 1

Party In Interest As A Defendant in Related )
United States District Court, Northern )
District of California case 3:11-cv-04097 SI )

*NOTE: THE EXHIBITS LISTED HEREIN WILL BE SERVED UNDER SEPARATE COVER TITLED "INITIAL DISCLOSURES" AT THE SAME TIME AS THIS COMPLAINT AND SUMMONS ARE SERVED*

*STERNS V. MARSHALL* (2011) U. S. 131, S. Ct. 2594 requires this adversary lawsuit be forwarded to an Article III Court

Plaintiff does not consent to Article I bankruptcy court judgment by Article I bankruptcy judge and objects to Article I bankruptcy court jurisdiction to enter final judgment. See *In re Mann* (9th Cir. 1990 ) 907 F. 2d 923, 925 – 926.

### Specific Demand For Jury Trial

Plaintiff does not consent to trial in an Article I bankruptcy court and demands jury trial in an Article III United States District Court.

### Jurisdiction

As demonstrated below, defendants and each of them are involved in a "scheme or artifice to defraud" through embezzlement of assets from the Mazzaferri Trust contract, to which plaintiff is a direct beneficiary who has contributed substantially to said contract Mazzaferri Trust asset value with anticipation that the assets would not be embezzled but would be preserved for his inheritance, his brother Dean Mazzaferri's inheritance and Edith Mazzaferri's inheritance. As demonstrated below, the embezzlement of Mazzaferri Trust assets is directly connected to these bankruptcy proceedings, and other related cases that include United States District Court, Northern District of California case Mazzaferri v Lenci / Stanaland 3:11-cv-04097 SI, among other reasons stated below, due to attorney Stanaland and Searle illegally and unlawfully using Mazzaferri Trust assets as part of their embezzlement Mazzaferro Lawsuit

2

scheme to prosecute adversary proceedings 12-03183 and 12-03184 for their own personal gain that will have no benefit to the Mazzaferri Trust or any of its 19 beneficiaries, and further, as demonstrated below, by the combined duplicity of defendants Searle, Stanaland, Mazzaferri and Parisi to have Mazzaferro falsely, fraudulently arrested, falsely fraudulently imprisoned and falsely fraudulently maliciously criminally prosecuted; and, defendants Searle, Parisi, Stanaland filing documents in the main bankruptcy case as a continuation of that embezzlement scheme against Mazzaferri Trust assets that are being used to prosecute what those defendants know are time barred vexatious, harassing Adversary Proceedings 12-03183 and 03184 that incorporate what those defendants know are California Statute of Limitations time barred Superior Court of California County of San Francisco cases CGC-10-500462 and PTR-05-286962.   See *United State v. Wagner* (6th Cir. 2004 ) 382 F. 3d 598, 612, analyzing 18 U. S. C. 157 (1) in connection with 18 U. S. C. 157 (2) holding that bankruptcy fraud is not limited to filing a false petition but also extends to filing fraudulent documents in a bankruptcy case, to wit *Wagner*, *supra* states on page 612;

> "Wagner argues that the evidence 612*612 does not support his bankruptcy-fraud conviction because his actions did not have any "proven effect on the Bankruptcy Court." Wagner Br. at 24. Wagner was indicted and convicted pursuant to 18 U.S.C. § 157(2), which provides: A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so — . . . (2) files a document in a proceeding under title 11. . . shall be fined under this title, imprisoned not more than 5 years, or both. 18 U.S.C. § 157(2)."

> "We have stated, *"Section 157(1)* . . .contains three elements: 1) the existence of a scheme to defraud or intent to later formulate a scheme to defraud and 2) the filing of a bankruptcy petition 3) for the purpose of executing or attempting to execute the scheme." *United States v DeSantis*, 237 F 3d 607, 613 (6th Cir. 2001) (emphasis added); See also United States v McBride, 362 F. 3d 360, 373 (6th Cir. 2004); *Collier* ¶ 7.07[1], at 7-118 to 7-119. We apply the same test in analyzing § 157(2), *except that we are concerned with the filing of a document in a proceeding under Title 11 rather than the filing of a*

Mazzaferro Lawsuit

3

**bankruptcy petition.** In reviewing the sufficiency of the evidence of the intent to defraud, we are mindful of the fact "that the question of intent is generally considered to be one of fact to be resolved by the trier of the facts ... and the determination thereof should not be lightly overturned," *United States v. Daniel*, 329 F. 3d 480, 487 (6th Cir. 2003) (quotation omitted) (alteration in original).

( emphasis added by plaintiff )

See also *United States v. Milwitt* (9th Cir. 2007 ) 475 F. 3d 1150, 1155 --- focus of 28 U. S. C. 157 is a fraudulent scheme outside of bankruptcy that uses bankruptcy proceedings as a means of executing, extending, continuing or concealing the artifice.

In this case, as demonstrated below, defendant attorneys Stanaland and Searle involvement in this bankruptcy case is an extension of frauds against and embezzlement of assets from the Mazzaferri Trust contract, ( to which Mazzaferro is the natural son to Edith Mazzaferri and beneficiary who has contributed substantial asset value to said trust ), that was commenced by defendant attorney Shea when he committed on behalf of Parisi to the extent of Shea producing and recording false. fraudulent Deeds, producing false trusts and defendants Mazzaferri, Parisi, Stanaland and Searle making false police reports that resulted in plaintiff Mazzaferro's false fraudulent arrest, false fraudulent imprisonment and false fraudulent criminal malicious prosecution, the latter committed by defendants in an effort to hide their criminal duplicity scheme of falsifying Deeds, Mazzaferri Trust documents, producing a false IRS 706 Form, embezzlement of Section 8 Housing Funds and producing and filing in a Court false Edward Jones Financial Statements in a related State Court proceeding.

What this lawsuit will reveal is that all defendants are pathological liars who are involved in intrastate and interstate embezzlement schemes with their MAFIOSO cohort Missouri resident convicted felon embezzler Mansuetto Anthony Lenci and other numerous and various frauds that will render them disingenuous and not to be trusted that anything they

Mazzaferro Lawsuit

4

state, file or produce will or can be relied upon as true and accurate. In short, nothing they say or do can be considered credible because the gravamen of this lawsuit shatters the credibility of each defendant, in that, this lawsuit logically militates that defendants are, prima facie upon this verified complaint, not credible and that nothing they say or do can be relied upon as true; and, therefore by extension of that militated logic, their actions in this bankruptcy court and related adversary proceedings must be viewed with extreme distrust, trepidation and doubt as to truthfulness, accuracy and credibility.

Further, as to defendant attorneys Shea, Stanaland and Searle, their acts of violations of Rule of Professional Conduct and criminal activity herein demonstrated will require them to be forthwith disbarred and criminally prosecuted.

Therefore, because defendants have intertwined their duplicitous dishonesty into these bankruptcy proceedings, that duplicitous dishonesty is cognizable under any of the federal Article I bankruptcy court and Article III Court jurisdictional theories herein below listed, to wit;

Federal District Courts have original and exclusive jurisdiction of all cases, ( in this case main bankruptcy case 12-32655 and adversary proceedings 12-03183 and 12-03184 ), under Title 11 of the United States Code (i.e., all bankruptcy cases) (28 USC 1334(a); and original, but not exclusive, jurisdiction of all civil proceedings arising under Title 11 , or arising in or related to cases under Title 11. See 28 USC 1334(b).   Additionally, the district court in which a case under Title 11 is commenced has *Exclusive jurisdiction* of all of the property, wherever located, of the debtor as of the commencement of the case, and of property of the estate, 28 USC 1334(e)(1); and *Exclusive jurisdiction* over all claims or causes of action that involve employment of professionals under 11 USC 327 and disclosure requirements

Mazzaferro Lawsuit

5

thereunder (28 USC 1334(e)(2). The federal district courts have sole and exclusive jurisdiction of all bankruptcy "cases", 28 USC 1334(a). A "case" is "the bankruptcy case itself ... the case upon which all of the proceedings which follow the filing of a petition are predicated. Thus, 28 USC 1334(a) basically applies to 'core' administrative matters". See *Wayne Film Systems Corp. v. Film Recovery Systems Corp.* (ND IL 1986) 64 BR 45,49; *In re Alexander* (BC D ND 1985) 49 BR 733,735.

Exclusive jurisdiction over bankruptcy "cases" means a bankruptcy petition cannot be filed or challenged in state court. See *Gonzales v. Parks* (9th Cir. 1987) 830 F. 2d 1033,1035; see *Choy V. Redland Ins. Co.* (2002) 103 Cal App. 4th 789, 798-799, 127 CR2d 94, 101-state court lacks jurisdiction to determine whether bankruptcy petition was filed in bad faith. Federal district courts have original but not exclusive jurisdiction of all civil proceedings "arising under" Title 11, or "arising in" or "related to" cases under Title 11, 28 USC 1334(b).

Every controversy requiring resolution by the court is a "proceeding" and every proceeding springs from the filing of the bankruptcy petition. See *In re Alexander* (BC D ND 1985) 49 BR *733,735; In re Wolverine Radio Co.* (6th Cir. 1991) 930 F. 2d 1132, 1141, fn. 14- "anything that occurs within a case is a proceeding" (brackets omitted) (quoting congressional history). In this case, the frauds herein listed as committed by defendants that below demonstrates are are inextricably intertwined with Adversary Proceedings 12-03183 and 12-03184 require resolution by an Article III Federal District Court and is therefore "proceedings" that sprung from bankruptcy case 12-32655.

A civil proceeding that "arises under" Title 11 involves "a cause of action created or determined by a statutory provision of title 11" (i. e., the proceeding involves rights created by the Bankruptcy Code). See *In re Harris Pine Mills* (9th Cir. 1995) 44 F. 3d 1431, 1435; *In re*

Mazzaferro Lawsuit

6

*Eastport Assocs.* ( 9th Cir. 1991) 935 F. 2d 1071, 1076; *In re Ray* (9th Cir. 2010) 624 F. 3d 1124, 1131. A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code. See *In re Ray,* supra, 624 F. 3d at 1131 (citations omitted); see also *In re Harris Pine Mills,* supra, 44 F. 3d at 1435; *In re Eastport Assocs.,* supra, 935 F. 2d at 1076. Proceedings "arising in" a case under Title 11 are "core" proceedings. See *Stern v. Marshall,* supra, US at ,131 S. CT. 2594 at 2605- "Under our reading of the statute, core proceedings are those that arise in a bankruptcy case or under Title 11". Civil proceedings that do not "arise under" or "arise in" a bankruptcy case are still subject to district court jurisdiction if they are "otherwise related to" a bankruptcy case. See 28 USC 1334(b).

"Noncore" proceedings: "Otherwise related" proceedings are "noncore" in nature-i.e., they involve rights existing outside of bankruptcy. Although district courts have jurisdiction to hear and decide "noncore" matters, absent the parties' consent, *bankruptcy courts* may only hear, *but not decide,* "noncore" matters. The district court in which the bankruptcy case is commenced or pending has "exclusive jurisdiction-of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.", 28 USC 1334(e); see also *Matter of International institute of The Americas, Inc.* (D PR 1986) 63 BR 294, 298- 299; *Cournoyer v. Town of Lincoln* (1st Cir. 1986) 790 F. 2d 971, 977.

The District Court has exclusive jurisdiction over property of the debtor and property of the estate regardless whether the property is in the court's custody. See *In re Tucson Estates, Inc.* (9th Cir. 1990) 912 F. 2d 1162, 1168-purpose of 1334(e) is to eliminate jurisdictional

Mazzaferro Lawsuit

7

distinctions between property "in possession" and property "not in possession" of bankruptcy court; *In re Simon* (9th Cir. 1998) 153 F 3d 991, 996.

Finally as to this adversary proceeding being "core" or "non core" or "related to" the bankruptcy case, the Ninth Circuit has held, "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but ... it is an otherwise related or non-core proceeding." See *In re Harris Pine Mills* (9th Cir. 1995) 44 F. 3d 1431, 1435 (emphasis in original; internal quotes and citation omitted)]. The Ninth Circuit went further than above *In re Harris Pine Mills* when it adopted the test set forth in *Pacor v. Higgins* (3rd Cir. 1984) 743 F. 2d 984, 994, for determining "related to" jurisdiction. Under the *Pacor* test, a court has related to jurisdiction if "the *outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."* See *In re Fietz* ( 9th Cir. 1988) 852 F. 2d 455, 457 (emphasis in original); see also *In re Wilshire Courtyard* (9th Cir. BAP 2011) 459 BR 416, 428 at fn. *12- "Pacor* is among the most influential decisions in bankruptcy law, and forms the analytical framework for "related to" jurisdiction in the Third, Fourth, Fifth, Eighth, Ninth and Eleventh Circuits".

In this case, as to "core", "non core", "related to", "arising in" matters giving rise to Article III jurisdiction, as demonstrated below, the non Article III bankruptcy court, although faced with legion of Federal mandatory abstention doctrines, refused to abstain from fatally time barred underlying Superior Court of California, County of San Francisco cases CGC-10-500462 and PRE-05-286962, which are cases where plaintiff Mazzaferro is named as a co-defendant with debtor Robert Van Zandt. Therefore, under the above cited *Pacor* test, in addition to the other jurisdiction mandate above cited, defendants' duplicity, lies, frauds and

Mazzaferro Lawsuit

8

criminal acts are infused into and inextricably intertwined with main bankruptcy case 12-32655 and adversary proceedings Mazzaferri v Van Zandt # 12-03183 and Parisi v Van Zandt # 12-03184, in that, defendant Mazzaferri in this Adversary Proceedings is plaintiff against Mazzaferro and debtor Robert Van Zandt in Superior Court of California County of San Francisco case Mazzaferri v Mazzaferro CGC-10-500462 and defendant Parisi in this Adversary Proceeding is plaintiff against Mazzaferro and debtor Robert Van Zandt in Superior Court of California County of San Francisco case Parisi v Mazzaferro PTR-05-286962. In addition, plaintiff Mazzaferro made appearances in the main bankruptcy case 12-32655 and adversary proceedings 12-03183 and 12-03184 by filing the documents in all three cases requesting special notice and notice of related case.

### Notice of Related Cases Filed

Further, on April 16, 2013 Van Zandt filed, Docket # 65 in main bankruptcy case 12-32655, a Mandatory California Rule of Court notice of related cases that lists numerous and various cases that are inextricably intertwined with these bankruptcy proceedings that include that have not been settled:

United Stated District Court, Northern District of California case 3:11-cv-04097 SI ( Mazzaferri is plaintiff against Lenci and Stanaland )

Superior Court of California, County of San Francisco case CGC-10-500462 ( where defendant Mazzaferri in this Adversary Proceeding is suing Mazzaferro and debtor Robert Van Zandt with Stanaland as her attorney )

Superior Court of California, County of San Francisco case PTR-05-286962 ( where defendant Parisi in this Adversary Proceeding is suing Mazzaferro and debtor Robert Van Zandt with Searle as her attorney )

Superior Court of California, County of San Francisco case PCN-11-294956 ( where Parisi is alleged conservator for alleged estate of consrvatee Lucia Fiorani on whose behalf he is suing Mazzaferro and debtor Robert Van Zandt in Superior Court of California, County of San Francisco case PTR-05-286962 and

Mazzaferro Lawsuit

9

where Searle is impermissibly acting as attorney for Conservator Parisi and alleged conservatee Lucia Fiorani )

Superior Court of California, County of Sonoma SPR 84785
( where Searle is representing Mazzaferri and Parisi as plaintiff's against Mazzaferro as a defendant in three Probate Petitions )

As demonstrated below, the foregoing cases are inextricably intertwined with these bankruptcy proceeding and the frauds therein committed and herein exposed will most likely have an impact on the administration of this bankruptcy case.

### The Effect of Sterns v Marshall On Bankruptcy Court Jurisdiction Over This Adversary Proceeding

The United States Supreme Court has determined that even though the claim may be characterized as a "core" proceeding under 28 USC 157(b)(2)(C), a bankruptcy court, as a non-Article III court, lacks jurisdiction to rule on a state law counterclaim brought by the estate against a creditor that filed a proof of claim where ruling on the counterclaim requires the court to decide issues outside those required to resolve the creditor's proof of claim. *See Stern v. Marshall,* supra, US at , 131 S CT. at 2620. In this case, as demonstrated below, plaintiff Mazzaferro's claims against defendants are inextricably intertwined with defendant Mazzaferri Proof of Claim 2-1 and Parisi Proof of Claim 3-1, in that, said claims are based upon State Court Litigation wherein plaintiff Mazzaferro and debtor Robert Van Zandt are co-defendants and where certain of their defenses are the same and inextricably intertwined.

Simply put, Congress violated Article III when enacting 28 USC 157(b)(2)(C) because it purported to grant jurisdiction to non-Article III (bankruptcy) courts to decide a matter such, as this plaintiff Mazzaferro's Adversary Proceeding, that only Article III courts have jurisdiction to decide. See *Stern v. Marshall,* supra, U. S. at , 131 S. Ct. at 2620 – "We

Mazzaferro Lawsuit

10

conclude today that Congress, *in one isolated respect,* exceeded (Article III) in the Bankruptcy Act of 1984" (emphasis and parentheses added).

In this case, the issue is that defendants have benefited through embezzlement of assets of the Mazzaferri Trust, to which Mazzaferro is a direct beneficiary who has contributed substantially to the asset value of said Trust. As to the Proof of Claim issue raised in *Stern v. Marshall,* supra, US at , 131 S CT. at 2620, in this case, both alleged creditors Mazzaferri and Parisi filed, through defendant attorneys Stanaland and Searle, $0 proof of claim, ( Mazzaferri Proof of Claim 2-1 – Parisi Proof of Claim 3-1 ), which as demonstrated below, could not only be for the purpose to vex, harass, annoy and disturb debtor Robert Van Zandt in the main bankruptcy case, which is further proven by the fact that the main "no asset" bankruptcy case 12-32655 has been fully administered with no distribution to Mazzaferri or Parisi which time bars their respective adversary proceedings 12-03183 and 12-03184, but also for the purpose of corrupt defendant attorneys Stanaland and Searle to continue to financially rape the Mazzaferri Trust to which plaintiff is a direct beneficiary who has substantially contributed to the asset value of said trust.

Simply put, Stanaland and Searle are utilizing the physical real property of a Federal United States Bankruptcy Court and Bankruptcy law as a continuance vehicle to further facilitating the embezzlement of Mazzaferri Trust assets they were engaged in for a protracted period of time ***before*** Debtor Robert Van Zandt filed bankruptcy.

**Action is "Core", "Non Core" and "Related To" Debtor's Bankruptcy**

As demonstrated below, bankruptcy court rulings have inextricably intertwined "core" main bankruptcy case 12-32655, "non core" but "related to" adversary proceedings 12-01383 and 12-01384 with "non core" "related to" Superior Court of California County of San

Mazzaferro Lawsuit

11

Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California, County of Sonoma Probate case SPR 84785.

### Plaintiff Does Not Consent To Article I Bankruptcy Court Jurisdiction Or Final Judgment Being Entered By Article I Bankruptcy Judge

As herein demonstrated, due to the fact that this adversary proceeding lawsuit is directed to "core, "non core" and "related to" issues inextricably intertwined with main bankruptcy case 12-32655 and adversary proceedings Mazzaferri v. Van Zandt 12-03183 and Parisi v Van Zandt 12-03184 and Superior Court of California County of San Francisco cases Mazzaferri v Van Zandt CGC-10-500462 and Parisi v Van Zandt PTR-05-286962, plaintiff does not consent to the Article I bankruptcy jurisdiction or the Article I bankruptcy judge entering final judgment in this case. See *In re Mann* ( 9th Cir. 1990 ) 907 F. 2d 923, 925 – 926 citing on page 926 *Daniels-Head and Associates v. William M. Mercer, Inc.,* ( 9th Cir. 1987 ) 819 F. 2d at 918 – 919 and *White v. McGinnis* 903, F. 2d 699 (9th Cir. 1990 ) ( en banc ) --- Litigant who did not object to bankruptcy court jurisdiction when he filed or during proceedings of adversary proceedings waived such jurisdiction objection.

THEREFORE, plaintiff objects to Article I bankruptcy court jurisdiction or Article I bankruptcy judge entering final judgment in this case, and further, plaintiff requests this case be forthwith transferred to a United States District Court for all proceedings and further plaintiff demands jury trial.

### Parties To The Action

Ronald Mazzaferro is the plaintiff in this lawsuit with address of P. O. Box 536, El Verano, CA 95433 and phone number (707) 703 6976. Mazzaferro's capacity to sue as a beneficiary to the Mazzaferri Trust is fully established as a matter of law in below

Mazzaferro Lawsuit

12

Memorandum of Law Regarding Plaintiff Mazzaferro Standing To Sue. Further as demonstrated below, Mazzaferro is the victim of 14 serious felonies committed against him by defendants Parisi, Searle and Mazzaferri, and most probably Stanaland, as he is inextricably linked to all other defendants and, as demonstrated below, was fully aware that Mazzaferro had been subjected to false arrest that Stanaland attempted to capitalize upon.

Defendant William Parisi is plaintiff against Mazzaferro and debtor Robert Van Zandt in Superior Court of California, County of San Francisco case PTR-05-286962 and plaintiff against Van Zandt in Adversary Proceeding 12-03184 wherein he is also litigating the State Court case where Mazzaferro is a defendant, Superior Court of California, County of San Francisco case PTR-05-286962. Parisi is also plaintiff against Mazzaferro in two Probate Petition lawsuits in Superior Court of California, County of Sonoma case SPR-84785. Parisi's address is 312 Lake Street, Sonoma California with phone number (707) 938 0662.

Defendant Edith Mazzaferri is plaintiff against Mazzaferro and debtor Robert Van Zandt in Superior Court of California, County of San Francisco case CGC-10-500462 and plaintiff against Van Zandt in Adversary Proceeding 12-03183 wherein she is also litigating the State Court case where Mazzaferro is a defendant, Superior Court of California, County of San Francisco case CGC-10-500462. Edith Mazzaferri is also plaintiff against Mazzaferro in three Probate Petition lawsuits in Superior Court of California, County of Sonoma case SPR-84785. Her address and phone number is 599 Oregon Street, Sonoma, CA 95476 with phone number ( 707 ) 938 0440.

Defendant Edith Mazzaferri, as Trustee of Various Mazzaferri Trusts, resides at and administers said Trusts at 599 Oregon Street, Sonoma, CA 95476 with phone number ( 707 ) 938 0440.

Mazzaferro Lawsuit

13

Party In Interest Russell Stanaland, as he reported to the IRS gleaned from FOIA documents, is attorney and accountant for the Mazzaferri Family and is acting as attorney for Edith Mazzaferri in Superior Court of California, County of San Francisco case CGC-10-500462 wherein Mazzaferri is suing Mazzaferro and debtor Van Zandt and in Adversary Proceeding 12-03183 wherein he is representing Mazzaferri in also litigating the State Court case where Mazzaferro is a defendant, Superior Court of California, County of San Francisco case CGC-10-500462 and is a Party In Interest As A Defendant in Related United States District Court, Northern District of California case 3:11-cv-04097 SI. His address and phone number is 180 Montgomery Street, Suite 1850, San Francisco, CA 94104; with phone ( 415 ) 781 4000.

Defendant Lynn Searle is attorney for William Parisi in Superior Court of California, County of San Francisco case PTR-05-286962 wherein Parisi is suing Mazzaferro and debtor Van Zandt and in Adversary Proceeding 12-03184 wherein she is representing Parisi in litigating the State Court case where Mazzaferro is a defendant, Superior Court of California, County of San Francisco case PTR-05-286962. Searle is also representing Edith Mazzaferri, William Parisi and Gina Parisi as plaintiffs against Mazzaferro as a defendant in three Probate Petitions in Superior Court of California, County of Sonoma case SPR 85785. Searle is also representing Parisi as conservator for conservatee Estate of Lucia Fiorani and is representing Lucia Fiorani and the Estate of Lucia Fiorani in the same case. Searle's address and phone number is 220 Bush Street, Suite 1200 San Francisco, CA 94104 with phone number ( 415 ) 221 1798.

Defendant William Shea is an attorney with contact information of P. O. Box 2170, Sonoma, CA 95476 with phone (707) 996 5746.

Mazzaferro Lawsuit

14

Party In Interest Mansuetto Anthony Lenci is a convicted felon embezzler with address of 11200 Askew Avenue, Kansas City, MO 64137 with phone number (573) 745 9113 and is a Party In Interest As A Defendant in Related United States District Court, Northern District of California case 3:11-cv-04097 SI.

## Memorandum of Law Regarding Plaintiff Mazzaferro Standing To Sue

Plaintiff Mazzaferro's capacity to sue is recognized in Federal Rule of Civil Procedure 17 made applicable to bankruptcy by Federal Rule of Bankruptcy Procedure 7017. In particular, Federal Rule of Civil Procedure 17 (b) (1) which provides:

> (b) CAPACITY TO SUE OR BE SUED. Capacity to sue or be sued is determined as follows:
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

See also Federal Rule of Civil Procedure 17 (a) and *In re Davis* ( 5th Cir. 1999) 194 F 3d 570, 578; *Allstate Insurance Company v. Hughes* ( 9th Cir. 2004 ) 358 F. 3d 1089, 1093-1094, plaintiff is real party in interest based upon controlling substantive law, state or federal, which in the case the plaintiff's domicile is California making the following law applicable.

The applicable law of the individuals domicile is California Appellate Court decision *Bowles v Cavalli* 169 Cal. App. 4th 684 (2008) citing legions of cases under "2. Standing" at pages 691 – 694 holding that a beneficiary to a trust, in this case plaintiff Mazzaferro as beneficiary to the Mazzaferri Trust, has a *direct right* to sue trustee Edith Mazzaferri individually, Edith Mazzaferri as the Trustee of the Mazzaferri Trust, Edith Mazzaferri both individually and as trustee and third parties, or, third parties alone for breach of trust, to wit *Bowles v Cavalli, supra*. provides at pages 692-694:

### 2. Standing

Mazzaferro Lawsuit

15

(2) Defendants argue plaintiff has no standing to bring this action against Richard and Mr. Reid. We conclude plaintiff has standing. As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf. (Cal. Prob. Code 16249, 16010, 16011; Code Civ. Proc., 369; *Wolf v. Mitchell, Silberg & Knupp* (1999) 76 Cal. App. 4th 1030, 1035-1036 [ 90 Cal. Rptr. 2d 792 ]; *Pillsbury v. Karmgard* (1994) 22 Cal. App. 4th 743, 753-754 [ 27 Cal. Rptr. 2d 491]; *Saks v. Damon Raike & Co.* (1992) 7 Cal. App. 4th 419, 427 [ 8 Cal. Rptr. 2d 869].) Conversely, a trust beneficiary cannot sue in the name of the trust. *Pillsbury v. Karmgard supra*, 22 Cal. App. 4th at p. 753; *Saks v. Damon Raike & Co., supra*, 7 Cal. App. 4th at p. 427; *Powers v. Ashton* (1975) 45 Cal. App. 3d 783, 787-788 [ 119 Cal. Rptr. 729].) But a trust beneficiary can bring a proceeding against a trustee for breach of trust. ( Cal .Prob. Code 17200, 16420. *Work v. County National Bank etc. Co.* (1935) 4 Cal. 2d 532, 536 [ 51 P. 2d 90]; *City of Atascadero v. Merrill Lynch, Fenner & Smith, Inc.* (1998) 68 Cal. App. 4th 445, 463 [ 80 Cal. Rptr. 2d 329 ]; *Pierce v. Lyman* (1991) 1 Cal. App. 4th 1093, 1103 [ 3 Cal. Rptr. 2d 236 ].) Moreover, it is well established, and this court has held, that a trust beneficiary can pursue a cause of action against a third party who actively participates in or knowingly benefits from a trustee's breach of trust. *Harnedy v. Williams* (2003) 110 Cal. App. 4th 1333, 1341-1342 [ 2 Cal. Rptr. 3d 798 ]; *Wolf v. Mitchell, Silberg & Knupp*, supra, 76 Cal. App. 4th at pp. 1035-1041; *City of Atascadero v. Merrill Lynch, Fenner & Smith, Inc., supra*, 68 Cal. App. 4th at pp. 462-467; *Pierce v. Lyman, supra*, 1 Cal. App. 4th at pp. 1104-1106; *Morales v. Field, DeGoff, Huppert & McGowan* (1979) 99 Cal. App. 3d 307, 314-315 [ 160 Cal. Rptr. 239]; Rest.2d Trusts, § 294, pp. 69-71; 4 Scott on Trusts (4th ed. 1989) §§ 282, 291, 294.1, pp. 25-29, 77-87, 98-101; Bogert, The Law of Trusts and Trustees (2d rev. ed. 1995) §§ 868-869, 901, 955, pp. 103-123, 304-320, 679-685; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 222, p. 803; 60 Cal.Jur.3d (2005) Trusts, § 382, p. 527.)

(3) Scott on Trusts explains: "[I]f a third person commits a tort with respect to the trust property, the trustee and not the beneficiary is ordinarily the proper party to bring an action against him. The beneficiary can maintain a suit in equity against the tortfeasor only if the trustee improperly refuses or neglects to bring an action, or if the trustee cannot be subjected to the jurisdiction of the court, or if there is a vacancy in the office of trustee. In such a case the third person is acting adversely to the trustee; he is liable to the trustee to the same extent to which he would be liable if the trustee held the property free of trust; he does not, save indirectly, incur any liability to the beneficiary. [¶] The situation is different where the trustee in breach of trust transfers property to a third person. (4) In this situation the third person is not acting adversely to the trustee, and would have done no wrong and incurred no liability if the

Mazzaferro Lawsuit

16

trustee had held the property free of trust. The wrong that he commits is a wrong to the beneficiaries in taking or retaining the property after he has notice of the breach of trust, and he thereby incurs a liability to them unless, indeed, he is a bona fide purchaser. In this situation, therefore, the beneficiaries can maintain a suit in equity against the transferee, 693*693 if he took with notice of the breach of trust or paid no value. It is true that the trustee, if he can be subjected to the jurisdiction of the court, should ordinarily be joined as a party. But this is in order that the whole controversy may be determined in a single suit, and not because the right of the beneficiaries against the transferee is only a derivative right through the trustee. Primarily the liability of the transferee is to the beneficiaries rather than to the trustee, and the right of the beneficiaries against the transferee is a direct right and not one that is derivative through the trustee." (4 Scott on Trusts, *supra*, § 294.1, pp. 98-100, fns. omitted.) This comment, with minor language revisions, is repeated in volume 5, Scott and Ascher on Trusts (5th ed. 2008) section 29.1.11.1, pages 1994-1995.

(5) Bogert, The Law of Trusts and Trustees, is in accord, "If the trustee and a third person join in committing a breach of trust, . . . there are true alternative causes of action available for enforcement against the third party. The wrongdoing trustee is permitted to repent of his misdeed and to sue the third person to recover the trust property or its value. And this privilege is also open to his executor, or to a successor as trustee, or to a co-trustee. . . . [¶] In such a case the beneficiary may also sue. He has two causes of action, one against the trustee for his part in the breach, and the second against the third person who participated. He may sue them separately or join them in a single suit. . . . It is immaterial whether the wrongdoing trustee could have sued the third party-participant. The beneficiary is enforcing a cause of action belonging to him, and is not acting as a representative of the guilty trustee in realizing upon a claim held by the later. [¶] The court's permission that the beneficiary may sue the third person in case of collusive participation is based on practical considerations. The wrongdoing trustee is apt to conceal the breach in order to shield himself from liability, and, instead of repenting and seeking a cure for the breach, will generally ignore it and fail to take action against the third party. If he alone were given the power to sue the participant, in many cases the cause of action would be barred by delay in enforcement. To obviate this result it is necessary to give the beneficiary an independent cause of action." (Bogert, The Law of Trusts and Trustees, *supra*, § 955, pp. 679-682, fns. omitted.)

(6) Contrary to defendants' assertions, there is no requirement that the third party stand in a fiduciary relationship with the trust or intentionally direct misrepresentations or other wrongdoing at the beneficiaries. *Harnedy v. Williams*, supra, 110 Cal. App. 4th at pp. 1341-1342; *Wolf v.*

Mazzaferro Lawsuit

17

*Mitchell, Silberg & Knupp,* supra, 76 Cal. App. 4th at pp. 1035-1041; *City of Atascadero v. Merrill Lynch, Fenner & Smith, Inc., supra,* 68 Cal. App. 4th at pp. 462-467; Saks v. Damien Raike & Co., supra, 7 Cal. App. 4th at p. 428; *Pierce v. Lyman, supra,* 1 Cal. App. 4th at pp. 1104-1106; *Morales v. Field, DeGoff, Huppert & McGowan* (1979) 99 Cal. App. 3d 307, 314-315 [ 160 Cal. Rptr. 239]; Rest.2d Trusts, § 294, pp. 69-71; 4 Scott on Trusts (4th ed. 1989) §§ 282, 291, 294.1, pp. 25-29, 77-87, 98-101. Rest.2d Trusts, § 294, pp. 69-71; 4 Scott on Trusts, *supra,* §§ 282, 291, 294.1, pp. 27-28, 77-87, 694*694 98-101; Bogert, The Law of Trusts and Trustees, *supra,* §§ 868-869, 901, 955, pp. 103-123, 304-320, 679-685; 13 Witkin, Summary of Cal. Law, *supra,* Trusts, § 222, p. 803; 60 Cal.Jur.3d, *supra,* Trusts, § 382, p. 527.) Further, contrary to defendants' argument, the beneficiary's cause of action is independent and not derivative through the trustee; therefore, the trustee is not a necessary party to the action. *Harnedy v. Williams,* supra, 110 Cal. App. 4th at pp. 1341-1342; *City of Atascadero v. Merrill Lynch, Fenner & Smith, Inc., supra,* 68 Cal. App. 4th at p. 465; 4 Scott on Trusts, *supra,* § 294.1, pp. 98-100; Bogert, The Law of Trusts and Trustees, *supra,* § 955, pp. 679-682.)

The Court of Appeal has explained: "[W]hen the claim being asserted rests in whole or in part on alleged breaches of trust by the trustee, a beneficiary has standing to pursue such a claim against either (1) the trustee directly, (2) the trustee *and* third parties participating in or benefiting from his, her, or its breach of trust, or (3) such third parties alone." ( *Harnedy v. Williams,* supra, 110 Cal. App. 4th at pp. 1341-1342 ); accord, 60 Cal.Jur.3d, *supra,* Trusts, § 382, p. 527.) The Court of Appeal has further held: "Ordinarily, when a third party acts to further his or her own economic interests by participating with a trustee in such a breach of trust, the beneficiary will bring suit against *both* the trustee and the third party. However, it is not necessary to join the trustee in the suit, because `primarily it is the beneficiaries who are wronged and who are entitled to sue. . . .' (4 Scott on Trusts, *supra,* § 282, p. 28.) The liability of the third party is to the beneficiaries, rather than to the trustee, `and the right of the beneficiaries against the [third party] is a *direct right* and not one that is derivative through the trustee.' (*Id.* § 294.1, pp. 99-100, italics added.)" (*City of Atascadero v. Merrill Lynch, Fenner & Smith, Inc., supra,* 68 Cal. App. 4th at pp. 462-467.)

### Verified Facts of The Case

My name is Ronald Mazzaferro, I am the plaintiff in this action and have personal knowledge of the following:

Mazzaferro Lawsuit

18

I Declare:

1. On September 17, 2012 Plaintiff Robert Van Zandt filed Chapter 7 bankruptcy in this court under Chapter 7 case 12-32655 thereby creating a bankruptcy estate over which the District Court has exclusive jurisdiction under 28 U. S. C .1334 (e). See Docket # 1 case 12-32655.

2. On December 21, 2012 defendant Edith Mazzaferri, through defendant Stanaland, filed Proof of Claim 2-1 that has attached as Exhibit A a voluminous lawsuit filed on September 29, 2010 against Debtor Robert Van Zandt and Mazzaferro in Superior Court of California, County of San Francisco case CGC-10-50462. See Claims Register, Claim Number 2-1.

3. On December 23, 2012 defendant William Parisi, through defendant Searle, filed Proof of Claim 3-1 that has attached as Exhibit A another voluminous lawsuit filed on January 31, 2012 against Debtor Robert Van Zandt and Mazzaferro in Superior Court of California, County of San Francisco case PTR-05-286962, See Claims Register Claim Number 3-1.

4. On December 21, 2012 defendant Edith Mazzaferri, through defendant attorney Stanaland, filed adversary proceeding 12-03183 wherein she and defendant attorney Stanaland impermissibly attempt to violate legion of federal abstention doctrines by seeking litigation of Superior Court of California County of San Francisco case CGC-10-500462 attached as Exhibit A to that Adversary Proceeding to run concurrently with their adversary proceeding 12-03183.

5. On December 23, 2012 William Parisi, through defendant attorney Searle, filed adversary proceeding 12-03184 wherein they impermissibly attempt to violate legion of federal abstention doctrines by seeking litigation of Superior Court of California County of San Francisco case PTR-05-286962 attached as Exhibit A to that Adversary Proceedings to run concurrently with his adversary proceeding 12-03184.

Mazzaferro Lawsuit

19

6.    On January 21, 2013, Docket # 20 in main bankruptcy case 12-32655, the bankruptcy judge signed ORDER GRANTING RELIEF FROM AUTOMATIC STAY, under 11 U. S. C. 362, allowing defendant William Parisi and defendant Lynn Searle to pursue the lawsuit against debtor attached as Exhibit A to Proof of Claim 3-1 and as Exhibit A attached to Adversary Proceeding 12-03184 that also names Mazzaferro as a defendant, with the provision that no judgment can be enforced against debtor without order of the bankruptcy court.

7.    On April 1, 2013, Docket # 51 in main bankruptcy case 12-32655, the bankruptcy judge signed ORDER: (1) RE DEFENDANT'S MOTION FOR RELIEF FROM STAY; AND (2) DEBTOR'S REQUEST FOR SANCTIONS, under Title 11 U. S. C. 362, allowing defendant Edith Mazzaferri and defendant Stanaland to pursue the lawsuit against debtor attached as Exhibit A to Proof of Claim 2-1 and As Exhibit A to Adversary Proceeding 12-03184 that also names Mazzaferro as a defendant, with the provision that no judgment can be enforced against debtor without order of the bankruptcy court.

8.    On February 4, 2013 debtor Van Zandt filed motion, Docket # 6 - 10 in adversary proceedings 12-03184 to dismiss Parisi v Van Zandt adversary proceedings 12-03184 on grounds that said action violates legion of federal abstention doctrines, in that, Parisi seeks to litigate adversary proceeding 12-03184 against debtor Robert Van Zandt concurrently with Superior Court of California County of San Francisco case PTR-05-286962, wherein the latter case Mazzaferro is a defendant.

9.    On February 19, 2013 Van Zandt filed motion, Docket # 12- 16 in adversary proceedings 12-03183, to dismiss Mazzaferri v Van Zandt adversary proceedings 12-03183 on grounds that said action violates legion of federal abstention doctrines, in that, Mazzaferri seeks to litigate said adversary proceeding 12-03184 against debtor Robert Van Zandt

Mazzaferro Lawsuit

20

concurrently with Superior Court of California County of San Francisco case CGC-10-500462, wherein the latter case Mazzaferro is a defendant.

10. On March 22, 2013 the bankruptcy judge issued an order, Docket # 29 in adversary proceeding 12-03184, staying Parisi v Van Zandt adversary proceeding.

11. On April 16, 2013 the bankruptcy judge issued an order, Docket # 37 in adversary proceeding 12-03183, staying Mazzaferri v Van Zandt adversary proceeding.

12. Plaintiff believes and based upon said belief states the foregoing demonstrates the bankruptcy court has retained and is exercising concurrent jurisdiction over Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and any judgments obtained by Mazzaferri or Parisi in those cases wherein Mazzaferro is listed as defendant; and therefore, plaintiff believes and upon that belief states that the bankruptcy court has been duped by defendants into unknowingly allowing itself to be used as an extension of and inextricably intertwined with the below listed frauds and criminal acts committed against Mazzaferri Trusts and plaintiff Mazzaferro in addition to the below disclosed ancillary fraudulent scheme by defendants.

13. Defendant Edith Mazzaferro is 68 year old plaintiff Ronald Mazzaferro's 89 year old mother.

14. Edith Mazzaferri is alleged to be currently acting trustee of various Mazzaferri Trusts to which Mazzaferro is a direct beneficiary and who, over the years, has been a dutiful son who contributed substantial value to Mazzaferri Trust of approximately $2,500,000.00.

15. Defendant William Parisi is plaintiff's non blood relative son in law who has contributed little or nothing of value to the Mazzaferri Trusts.

16. Parisi is a friend and associate of convicted felon embezzler of Missouri resident

Mazzaferro Lawsuit

21

Mansuetto Anthony Lenci.

17.     Mansuetto Anthony Lenci is married to plaintiff's nice April Lenci.

18.     Plaintiff has obtained FOIA from the Internal Revenue Service showing that Stanaland reported to an IRS agent that he is both the attorney and accountant for the Mazzaferri Family and, the FOIA further demonstrates that Stanaland and defendant Parisi and their convicted felon embezzler associate Mansuetto Anthony Lenci met at various times with IRS personnel.

19.     In April of 2010 Lenci made terrorist threats to murder Mazzaferro if Mazzaferro did not cease his attempts to get information on the status of the Mazzaferri Trust assets.

20.     **Exhibit 41** attached hereto is a true and correct copy of the Restraining Order Mazzaferro obtained against Lenci due to Lenci's terrorist threats against Mazzaferro.

21.     On July 29, 2007 Edith Mazzaferri's husband Joseph P. Mazzaferri died making the ByPass portions of the 2006 Mazzaferri Trust irrevocable and unchangeable after Joseph P. Mazzaferri's death.

22.     On October 7, 2012 Edith Mazzaferri invited Mazzaferro to meet with her at her house located at 599 Oregon Street, Sonoma CA 95476, which Mazzaferro did as a dutiful son.

23.     During that 4 hour and 45 minute meeting, Edith Mazzaferri confirmed the accuracy of the Internal Revenue FOIA showing that Stanaland was associated with convicted felon embezzler Mansuetto Anthony Lenci and Parisi.

24.     During that 4 hour and 45 minute meeting, Edith Mazzaferri informed Mazzaferro that she had given Power of Attorney to Lenci and Parisi and assumed Lenci was acting as a co Trustee in Missouri under that Power of Attorney.

25.     During that 4 hour and 45 minute meeting, Edith Mazzaferri stated that she was being pressured by Stanaland, Parisi, Lenci and Searle to sell real properties, allegedly against her

Mazzaferro Lawsuit

22

will, to pay attorney fees for Superior Court of California, County of San Francisco cases CGC-10-500562, PTR-05-286962 and PCN-11-294956.

26.     During that 4 hour and 45 minute meeting, Edith Mazzaferri informed plaintiff that Stanaland, Parisi and Lenci informed her, Edith Mazzaferri, that Mazzaferro was suing her and that she was a defendant in Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and that Mazzaferro was also suing her in Superior Court of California, County of Sonoma probate case SPR 84785.

27.     During that 4 hour and 45 minute meeting, Edith Mazzaferri informed Mazzaferro that she wanted Mazzaferro to dismiss all three litigations against her that she erroneously believes Mazzaferro is plaintiff and she defendant, Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California, County of Sonoma probate case SPR 84785, so that Mazzaferro and she could work things out without incurring any more attorney fees.

28.     During that 4 hour and 45 minute meeting, Mazzaferro showed lawsuits Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California, County of Sonoma Probate case SPR 84785 to Edith Mazzaferri that shows *__she is the plaintiff__* in all three cases wherein she is suing Mazzaferro as the defendant in all three cases.

29.     At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that she participated with Parisi, Lenci and Stanaland to record a false, fraudulent Deed with the San Francisco California County Recorder.

30.     At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that she participated with Parisi, Lenci and Stanaland to record a false fraudulent Deed with the San

Mazzaferro Lawsuit

23

Francisco Recorder for the purpose to ***embezzle and divert Federal Section 8 Housing Funds to an account set up by Lenci and Parisi***.

31.     At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that she authorized Searle and Parisi to use Mazzaferri Trust assets to fund Superior Court of California, County of San Francisco Conservatorship Case PCN-11-294956 wherein Parisi is acting as conservator of conservatee Estate of Lucia Fiorani.

32.     At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that Lenci associated with Parisi in getting Parisi's attorney William Shea to create false deeds that were eventually recorded against Mazzaferri Trust real property assets.

33.     At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that Parisi ***shredded numbered pages*** of the irrevocable 2006 Mazzaferri Trust and inserted ***unnumbered pages*** that benefited Parisi through his wife Gina Parisi.

34.     At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that paragraphs 6.4 (b) & (c) & (e) of the 2006 Mazzaferri Trust were part of what Parisi shredded and replaced, in that Parsi replaced pages to include;

> (a)     paragraph 6.4 (b) that refers to Mazzaferri liability on a $130,000.00 note that had been forgiven / cancelled well before the 2006 Mazzaferri Trust;
>
> (b)     paragraph 6.4 (c) that leaves a piece of real property to Gina Parisi that William Parisi benefited from because as demonstrated below, that property ended up in the Parisi Family Trust;
>
> (c)     paragraph 6.4 (c) that left a 19 foot Owens to Gina Parisi that had been owned by Mazzaferro for years before the creation of the 2006

Mazzaferro Lawsuit

24

Mazzaferri Trust;

    (d)    paragraph 6.4 (e) that divides the remainder into (4) equal shares where the shredded page only allowed for (2) equal shares;

    (e)    paragraph 6.4 (e) (iii) that left a portion of the (4) equal shares to Gina Parisi where there was no such provision in the shredded pages;

    (f)    paragraph 6.4 (e) (iv) that left a portion of the (4) equal shares to April Lenci where there was no such provision in the shredded pages.

35.    Defendant attorney Lynn Searle is representing Parisi as Conservator and Lucia Fiorani as Conservatee in Superior Court of California, County of San Francisco Conservatorship Case PCN-11-294956.

36.    At the 4 hour and 45 minute meeting Edith Mazzaferri disclosed to Mazzaferro that Searle convinced Mazzaferri that she, Edith Mazzaferri, was required to fund Superior Court of California, County of San Francisco Conservatorship Case PCN-11-294956 to further defend herself, Edith Mazzaferri, against Mazzaferro's lawsuits against her in Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California, County of Sonoma Probate case SPR 84785.

37.    During that 4 hour and 45 minute meeting Edith Mazzaferri became extremely distraught, ( or feigned being extremely distraught in an attempt to conceal her duplicity ), in discovering that she had been lied to by Stanaland, Parisi, Lenci and Searle that she had been deceived and duped by them inducing her to have paid tens of thousands of dollars for what Stanaland, Parisi, Lenci and Searle convinced her was required for her to ***defend herself*** in Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California, County of San Francisco Conservatorship Case PCN-Mazzaferro Lawsuit

25

11-294956 and Superior Court of California, County of Sonoma probate case SPR 84785. *( To the extent Edith Mazzaferri may be lying and disingenuous and putting on an act for Mazzaferro's consumption regarding her perceived surprise and being distraught will be further developed in discovery. )*

38.    The 4 hour and 45 minute meeting concluded with Edith Mazzaferri and Mazzaferro agreeing for Mazzaferro take any and all action to preserve and protect Mazzaferro Trust real property assets from Parisi and Lenci and from what Mazzaferri said was "lying" attorneys Stanaland and Searle.

39.    Mazzaferro's investigation into Sonoma County California Recorder and Lake County California Recorder documents related and connected to Mazzaferri Trust real properties revealed that Parisi had arranged for his own corrupt duplicitous attorney, defendant William Shea, who at the time as demonstrated below he did the following while having a disqualifying conflict of interest, to prepare and seek recording of various and numerous false, fraudulent documents that clouded, disrupted and broke the chain of titles to Mazzaferri Trust real properties, which, as demonstrated below, fits into the Mansuetto Anthony Lenci interstate real property embezzlement scheme plaintiff believes and upon that belief states that Lenci, Parisi, Stanaland, Mazzaferri and Searle are involved in with Mazzaferri financing at least a portion of the embezzlement scheme with Mazzaferri Trust assets, to wit;

40.    Attached hereto are various Recorded Instruments arranged in chronological date order that indicate preparation by William Shea and notarized  Camela Ruth Bergsund, and are referenced by Exhibit number:

> **Exhibit 1** is dated March 13, 2001 with Sonoma County Recorder Number 2001029204 and indicates that the recording was requested by William Shea and notarized by Bergsund on March 6, 2001. As can be seen thereon it is a Deed regarding

Mazzaferro Lawsuit

26

Gina and William Parisi.

**Exhibit 2** is also dated March 16, 2001 with Sonoma County Recorder Number 2001029205 and indicates that the recording was requested by Shea and notarized by Bergsund on March 6, 2001. As can be seen thereon it is also a Deed regarding Gina and William Parisi.

**Exhibit 3** is dated March 13, 2003 with Sonoma County Recorder Number 2003048323 and indicates that the recording was requested by Shea and notarized by Bergsund on March 3, 2003. As can be seen thereon it is a Trust Transfer Deed regarding Gina and William Parisi and the Parisi Family Trust.

**Exhibit 4** is dated January 18, 2008 with Lake County Recorder Number 2008001113 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. As you can see it is an affidavit of the death of Joseph Pietro Mazzaferri. This recording clearly indicates that Shea prepared it and requested it to be recorded. This is also true of all of the other recordings attached hereto.

**Exhibit 5** is dated January 18, 2008 with Lake County Recorder Number 2008001114 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. *As can be seen thereon it is an AFFIDAVIT-DEATH OF SETTLOR, TRUSTEE AND BENEFICIARY executed by Edith Mazzaferri regarding the Death of Joseph Pietro Mazzaferri testifying that at the July 29, 2007 date of death of Joseph P. Mazzaferri, evidenced by the COUNTY OF SONOMA CERTIFICATE OF DEATH attached to said AFFIDAVIT-DEATH OF SETTLOR, TRUSTEE AND BENEFICIARY, that the JOSEPH P. MAZZAFERRI and EDITH M. MAZZAFERRI, TRUSTEES, U. D. T. dated May 10, 1978 was in effect and had not been revoked and that "The property is now vested in title as follows: EDITH MAZZAFERRI, Successor Trustee of the JOSEPH P. MAZZAFERRI and EDITH M. MAZZAFERRI, TRUSTEES, U. D. T. dated May 10, 1978."*

**Exhibit 6** is dated January 24, 2008 with Lake County Recorder Number 2008001394 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. As you can see it a TRUST TRANSFER DEED regarding the Mazzaferri Living Trust as Amended and Restated in 2006 and the Mazzaferri Living Trust dated March 26, 2006 SURVIVORS TRUST. *However, there is no such March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 7** is dated January 24, 2008 with Lake County Recorder Number 2008001396 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. As can be seen thereon it is also a TRUST TRANSFER DEED regarding the Mazzaferri Living Trust as Amended and Restated in 2006 and the Mazzaferri Living Trust dated March 26, 2006 SURVIVORS TRUST. *However, there*

Mazzaferro Lawsuit

27

is no such *March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 8** is dated February 27, 2008 with Sonoma County Recorder Number 2008017266 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. As can be seen thereon it is also a TRUST TRANSFER DEED regarding the Mazzaferri Living Trust as Amended and Restated in 2006 and the Mazzaferri Living Trust dated March 26, 2006 SURVIVORS TRUST. *However, there is no such March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 9** is dated February 27, 2008 with Sonoma County Recorder Number 2008017267 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. As can be seen thereon it is also a TRUST TRANSFER DEED regarding the Mazzaferri Living Trust as Amended and Restated in 2006 and the Mazzaferri Living Trust dated March 26, 2006 SURVIVORS TRUST. *However, there is no such March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 10** is dated February 27, 2008 with Sonoma County Recorder Number 2008017268 and indicates that the recording was requested by Shea and notarized by Bergsund on January 15, 2008. As can be seen thereon it is also a TRUST TRANSFER DEED regarding the Mazzaferri Living Trust as Amended and Restated in 2006 and the Mazzaferri Living Trust dated March 26, 2006 SURVIVORS TRUST. *However, there is no such March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

41.     Plaintiff believes that foregoing **Exhibits 1 - 10** show attorney William Shea requested all the recordings for them and that said **Exhibits 1 - 10** were all notarized by Shea's Notary Public, Carmela Ruth Bergsund.

42.     Plaintiff believes and upon that belief states that as specifically indicated by **Exhibit 3,** there is a Trust named the Parisi Family Trust created by Shea for Gina Parisi and William Parisi and as indicated by **Exhibits 6 through 10** showing preparation of the recording

Mazzaferro Lawsuit

28

requested by Shea, there are ***alleged*** to be Trusts named the Mazzaferri Living Trust as Amended and Restated in 2006, the Mazzaferri Living Trust dated March 26, 2006, Bypass Trust and the Mazzaferri Living Trust dated March 26, 2006, Survivors Trust. ***However, there is no such Mazzaferri Living Trust dated March 26, 2006, Bypass Trust and there is no March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.***

43.     **Exhibit 11** is a letter from Plaintiff Mazzaferro to defendant Shea dated November 5, 2008.

44.     **Exhibit 11** shows thereon that Ruth Bergsund wrote "Received 11/5/08 C. Bergsund";

45.     The second paragraph of **Exhibit 11** indicates a phone call from Bergsund to Mazzaferro indicating Bergsund told plaintiff Mazzaferro that Shea was no longer the attorney for Trustee Mazzaferri or her husband.

46.     Plaintiff believes and upon that belief states that the following demonstrates that although Bergsund informed Mazzaferro that Shea was no longer the attorney for defendant Trustee Edith Mazzaferri, Shea continued to prepare false recording documents for the said Trustee for recordings which Bergsund also notarized after telling Mazzaferro in her phone call that Shea was no longer attorney for Mazzaferri, as follows;

> **Exhibit 12** is dated November 21, 2008 with Lake County Recorder Number 2008020256 and indicates that the recording was requested by Shea and notarized by Bergsund on November 18, 2008. Said documents was created by Shea for the Mazzaferri Living Trust as Amended and Restated in 2006 for the benefit of Defendant Gina Parisi. Said document transferred a valuable piece of lake front real property Mazzaferri Living Trust asset to the ownership of Defendant Gina Parisi. ***However, before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.***

Mazzaferro Lawsuit

29

Exhibit 13 is dated December 8, 2008 with Lake County Recorder Number 2008020920 and indicates that the recording was requested by Shea and notarized by Bergsund on November 18, 2008.

Exhibit 14 is dated December 9, 2008 with Lake County Recorder Number 2008020970 and indicates that the recording was requested by Shea and notarized by Bergsund on December 4, 2008. Said document was created by Shea to effectuate transfer of the property listed in **Exhibit 12** to Defendants Gina Parisi and William Parisi as Trustees of the Parisi Family Trust.

Exhibit 15 is dated January 22, 2009 with Lake County Recorder Number 2009000832 and indicates that the recording was requested by Shea and notarized by Bergsund on January 16, 2009. Said document was created by Shea for the Mazzaferri Living Trust as Amended and Restated in 2006 for the benefit of Defendant Gina Parisi. Said document transferred a valuable piece of lake front real property Mazzaferri Living Trust asset to the ownership of Gina Parisi. *However, before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

Exhibit 16 is dated January 22, 2009 with Lake County Recorder Number 2009000833 and indicates that the recording was requested by Shea and notarized by Bergsund on January 16, 2009.

Exhibit 17 is dated January 30, 2009 with Lake County Recorder Number 2009001336 and indicates that the recording was requested by Shea and notarized by Bergsund on January 16, 2009. Said document was created by Shea to effectuate transfer of the property listed in **Exhibit 15** to Defendants Gina Parisi and William Parisi as Trustees of the Parisi Family Trust.

Exhibit 18 is dated April 28, 2009 with Lake County Recorder Number 2009006627 and indicates that the recording was requested by Shea and notarized by Bergsund on April 21, 2009.

Exhibit 19 is dated May 15, 2009 with Lake County Recorder Number 2009007938 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. *As can be seen thereon it is an AFFIDAVIT-DEATH OF SETTLOR, TRUSTEE AND BENEFICIARY executed by Edith Mazzaferri regarding the Death of Joseph Pietro Mazzaferri testifying that at the July 29, 2007 date of death of Joseph P. Mazzaferri, evidenced by the COUNTY OF SONOMA CERTIFICATE OF DEATH attached to said AFFIDAVIT-DEATH OF SETTLOR, TRUSTEE AND BENEFICIARY, that the JOSEPH P. MAZZAFERRI and EDITH M. MAZZAFERRI, TRUSTEES, U. D. T. dated May 10, 1978 was in effect and had not been revoked and that "The property is now vested in title as follows: EDITH*

Mazzaferro Lawsuit

30

MAZZAFERRI, Successor Trustee of the JOSEPH P. MAZZAFERRI and EDITH M. MAZZAFERRI, TRUSTEES, U. D. T. dated May 10, 1978."

**Exhibit 20** is dated May 15, 2009 with Lake County Recorder Number 2009007939 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. *However, there is no such March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 21** is dated May 15, 2009 with Lake County Recorder Number 2009007940 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009.

**Exhibit 22** is dated May 15, 2009 with Lake County Recorder Number 2009007941 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. *As can be seen thereon it is an AFFIDAVIT-DEATH OF SETTLOR, TRUSTEE AND BENEFICIARY executed by Edith Mazzaferri regarding the Death of Joseph Pietro Mazzaferri testifying that at the July 29, 2007 date of death of Joseph P. Mazzaferri, evidenced by the COUNTY OF SONOMA CERTIFICATE OF DEATH attached to said AFFIDAVIT-DEATH OF SETTLOR, TRUSTEE AND BENEFICIARY, that the JOSEPH P. MAZZAFERRI and EDITH M. MAZZAFERRI, TRUSTEES, U. D. T. dated May 10, 1978 was in effect and had not been revoked and that "The property is now vested in title as follows: EDITH MAZZAFERRI, Successor Trustee of the JOSEPH P. MAZZAFERRI and EDITH M. MAZZAFERRI, TRUSTEES, U. D. T. dated May 10, 1978."*

**Exhibit 23** is dated May 15, 2009 with Lake County Recorder Number 2009007942 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. *However, there is no such March 26, 2006 SURVIVORS TRUST and before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 24** is dated May 15, 2009 with Lake County Recorder Number 2009007943 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. Said document was created by Shea for the Mazzaferri Living Trust as Amended and Restated in 2006 for the benefit of Defendant Gina Parisi. Said document transferred a valuable piece of lake front real property Mazzaferri Living Trust asset to the ownership of Gina Parisi. *However, before this recording occurred plaintiff is informed and believes and upon that belief states that Parisi had shredded the original Mazzaferri Living Trust as Amended and Restated in 2006.*

**Exhibit 25** is dated May 15, 2009 with Lake County Recorder Number 2009007944

Mazzaferro Lawsuit

and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. Said document was created by Shea for the Mazzaferri Living Trust as Amended and Restated in 2006 for the benefit of Defendant Gina Parisi. Said document transferred a valuable piece of lake front real property Mazzaferri Living Trust asset to the ownership of Defendant Gina Parisi.

**Exhibit 26** is dated May 15, 2009 with Lake County Recorder Number 2009007945 and indicates that the recording was requested by Shea and notarized by Bergsund on May 6, 2009. Said document was created by Shea to effectuate transfer of the property listed in **Exhibit 25** to Gina Parisi and William Parisi as Trustees of the Parisi Family Trust.

47.    Plaintiff believes the following cases hold that attorneys cannot legally or ethically do what Shea did as depicted in the foregoing exposure of Shea's conflict of interest breaches of professional conduct by him committed for the benefit of Gina Parisi and William Parisi. See *Garcia v. Borelli* (1982) 129 Cal. App. 3d 24, 32 holding as to Shea being liable;

> (4) It is settled that intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover damages as third party beneficiaries and also on a tort liability for breach of duty owed directly to the beneficiaries. (*Lucas* v. *Hamm* (1961) 56 **Cal**.2d 583, 588 [15 **Cal**. Rptr. 821, 364 P.2d 685]; *Heyer* v. *Flaig* (1969) 70 **Cal**.2d 223, 226 [74 **Cal**. Rptr. 225, 449 P.2d 161]; *Bucquet* v. *Livingston* (1976) 57 **Cal**. **App**.3d 914, 921 [**129 Cal**. Rptr. 514].)

See also *Morales v. Field, De Geoff, Huppert, & Mac Gowan* (1979) 99 Cal. App. 3d 307, 313-317 and *Potter v. Moran* (1966) 239 Cal. App. 2d 873, 877-880 holding that Shea dual representation herein disclosed is "extrinsic fraud" upon the court and that he is directly liable for damages to plaintiff for that fraud.

48.    Plaintiff believes the application of the above citations is that Shea had been the attorney for Gina Parisi and William Parisi since at least 2001 evidenced by **Exhibits 1 and 2** and then accepted employment not only to actually draw up Mazzaferri Living Trust, but also to draw up and request recordings of **Exhibits 4 - 10 and 12 – 26**, some, if not all of those

Mazzaferro Lawsuit

32

recording, being false and fraudulent.

49.    In addition to **Exhibits 1 and 2** demonstrating Shea was the attorney for Gina Parisi and Bill Parisi since at least 2001, certain provisions of the Mazzaferri Living Trust as Amended and Restated in 2006 list Gina Parisi as a direct beneficiary, as follows;

> **Exhibit 30** is a true and correct copy of paragraph 6.4 (c) and (e) iii of the Mazzaferri Living Trust as Amended and Restated in 2006. As can be seen thereon, Gina Parisi is a direct beneficiary.

50.    In addition to the foregoing, the Lake County property to be left to Gina Parisi in paragraph 6.4 (c) of the Trust could only be recorded as gifted to her after the death of the surviving settlor, not before. That provision is under paragraph 4.6 of the Mazzaferri Living Trust as Amended and Restated in 2006. **Exhibit 31** is a true and correct copy of that paragraph 4.6.

51.    In addition to the foregoing, the "(1) Owens nineteen (19) foot inboard five passenger boat" to be left to Gina Parisi in paragraph 6.4 (c) of the Trust was at the time that Mazzaferri Living Trust As Amended and Restated in 2006 is alleged to have been created owned by Plaintiff Mazzaferro evidenced by him holding exclusive California generated vessel boat title to said boat and this fact was known to defendants Parisi and Mazzaferri and Mazzaferri's husband Joseph P. Mazzaferri at the time the alleged Mazzaferri Living Trust As Amended and Restated in 2006 is alleged to have been created, the latter Joseph P. Mazzaferri not only knew that said boat was owned by plaintiff Mazzaferro, but that plaintiff Mazzaferro had expended thousands of dollars in restoring said boat.

52.    Parisi capitalized on the false 6.4 (c) "(1) Owens nineteen (19) foot inboard five passenger boat" entry of the alleged Mazzaferri Living Trust As Amended and Restated in 2006 by concealing the boat from Mazzaferro and refusing Mazzaferro's numerous demands

Mazzaferro Lawsuit

33

that Parisi release his boat to him, which Parisi would not do, which prompted Mazzaferro to get the Lake County California Sheriff involved who contacted Parisi and, as I was informed by the Sheriff, warned Parisi that if he did not release the boat he, Pasisi, would be arrested for grand theft, whereupon, after the Sheriff warning Parisi agreed to release the boat to Mazzaferro, who, being elderly fearing for his safety, summoned Lake County Sheriff Elvis E. Cook for civil stand by to assist Mazzaferro in recovering his boat on May 17, 2009.

53.     On August 9, 2013 Searle filed a Petition in Superior Court of California, County of Sonoma case SPR 84785 supported by a declaration of defendant Shea attempting to excuse the false, fraudulent 6.4 (c) of the Mazzaferri Living Trust As Amended and Restated in 2006 that had been discovered in previous proceedings in that case.

54.     The alleged Mazzaferri Living Trust As Amended and Restated in 2006 that contains the false 6.4 (c) is attached to an IRS Form 706 which, **Exhibit 42**, in addition to containing a false 6.4(c), is further falsified by excluding entire pages.

55.     In addition, on dates July 20, 2013 and July 26, 2013, defendant Mazzaferri's accountant Robert Marek *could not testify in Superior Court of California, County of Sonoma Case SPR 84785 that the entries on IRS Form 706, Exhibit 42, that he is alleged to have submitted to the IRS were not false and fraudulent because he never saw any source documents to support the numbers he admitted he entered on the document; and further, he could not directly identify the name of the exact person who was alleged to have provided him with the information he could not verify as accurate and further, he could not provide a signed copy of that IRS Form 706.*

56.     On August 9, 2013 defendant Mazzaferri testified in Superior Court of California, County of Sonoma Case SPR 84785 to the identity of the person who worked with Marek as

Mazzaferro Lawsuit

34

the terms of paragraph 6.4 (d); and, although he knew, or should have known as that attorney, when Joseph P. Mazzaferri passed away on July 29, 2007 that all portions of paragraph 6.4 of the Trust became irrevocable; Shea prepared and requested recordings and Camela Ruth Bergsund notarized **Exhibits 12, 15, 24 and 25,** which transferred that real property to Gina Parisi, the named beneficiary under paragraph 6.4 (c) of the Trust, **Exhibit 30,** which is a violation of paragraph 4.6 of the Mazzaferri Living Trust as Amended and Restated in 2006. See **Exhibit 31** for paragraph 4.6 of the Mazzaferri Living Trust as Amended and Restated in 2006.

61.     Shea also prepared **Exhibits 14, 17 and 26** which transferred the real property listed in **Exhibits 12, 15, 24 and 25** into the Parisi Family Trust, which as shown by **Exhibit 3**, Shea created for Gina Parisi and William Parisi. **Exhibits 13, 16, 18 and 21** transferred the real property designated in paragraph 6.4 (d) of the alleged Mazzaferri Living Trust as Amended and Restated in 2006 to be left to RONALD S. MAZZAFERRO and DEAN J. MAZZAFERRI, to APRIL LENCI and JACOB MAZZAFERRI.

62.     Plaintiff believes and upon that belief states the foregoing demonstrates Shea made numerous deliberate attempts before he got the property descriptions right for his purpose to violate the very terms of the trust he drew up and that said violations of the trust benefited Gina Parisi and William Parisi.

63.     Plaintiff believes and upon that belief states that it is clear by the foregoing that Shea "knowingly" participated in breaches of the very Mazzaferri Trusts trust he drew up.

64.     Plaintiff believes and upon that belief states that what Shea did as an attorney and officer of the court constitutes "fraud upon the court" as held in the California cases of *Morales v. Field, De Geoff, Huppert, & Mac Gowan* (1979) 99 Cal. App. 3d 307, 313-317; *Potter v.*

Mazzaferro Lawsuit

36

*Moran* (1966) 239 CA 2d 873, 878-879, CR 229, 233 and *Estate of Charters* (1956) 46 C 2d 227, 236, 293 P 2d. 778, 783-784.

65.     **Exhibit 33** is a true and correct copy of a letter from Mazzaferro and U S Mail return receipts addressed to Shea that seeks clarification of Shea's role in the Mazzaferri Living Trust where the second to the last paragraph states;

> "As to you being the attorney for the Mazzaferri Living Trust, I have been informed that you are also the attorney for beneficiaries Bill and Gina Parisi."

66.     Not long after Shea received **Exhibit 33** alerting him to plaintiff Mazzaferro's knowledge of his conflict of interest, Shea was replaced by the law offices of ANDERSON, ZEIGLER, DISHAROON, GALLAGHER and GREY located at 50 Old Courthouse Square, Fifth Floor, Santa Rosa, California 95404.

**Dual Representation Conflict of Interest of Attorneys Shindledecker and Post**

67.     **Exhibit 34** is a copy of plaintiff Mazzaferro's letter to ANDERSON, ZEIGLER, DISHAROON, GALLAGHER and GREY and is self-explanatory in that it directs lawyers in that law firm to the foregoing Shea conflict of interest and also demonstrates how lawyers in that law firm were also conflicted in that one of the lawyers, Mary Catherine Doherty was representing Defendant Mazzaferri, Trustee of the Mazzaferri Living Trust as Amended and Restated in 2006 at the same time another lawyer in that law firm, Stephanie Coogler, was representing Gina Parisi and William Parisi; the last eight paragraphs of that letter, **Exhibit 34**, stating;

> So the conflict of interest created by Shea for the benefit of Gina Parisi is now continuing in your law offices.

> Therefore, I request that you clarify to Mazzaferro who, in this Mazzaferri Living Trust matter, is the client of your law offices;

Mazzaferro Lawsuit

37

· Is it Gina Parisi, Trustee of the PARISI FAMILY TRUST?

Is it the Parisi Family Trust ?

Is it Edith Mazzaferri, Trustee of the MAZZAFERRI LIVING TRUST AS AMENDED AND RESTATED IN 2006 ?

Is it Bill and Gina Parisi in their individual capacity?

Is it Gina Parisi, beneficiary of the MAZZAFERRI LIVING TRUST AS AMENDED AND RESTATED IN 2006.

To the extent that you are not in a position, or refuse to answer the foregoing query, please at least disclose how the foregoing does not place your law offices in conflict of interest status.

68.     None of the attorneys at the law offices of ANDERSON, ZEIGLER, DISHAROON, GALLAGHER and GREY denied the conflict of interest disclosed in **Exhibit 34**.

69.     Although attorneys Shindledecker and Post listed in **Exhibit 34** worked for the laws offices of ANDERSON, ZEIGLER, DISHAROON, GALLAGHER and GREY and had not denied the obvious conflict of interest, they represented Trustee Edith M. Mazzaferri in Superior Court of California, County of Sonoma, Probate Case SPR 82302 demonstrated by **Exhibit 35** which is the first page of a document styled "OBJECTION TO PETITION TO REMOVE TRUSTEE FOR BREACH OF TERMS OF THE TRUST AND FIDUCIARY DUTY AND APPOINT A BONDED PROFESSIONAL FIDUCIARY TO ACT AS TEMPORARY TRUSTEE; and OBJECTION TO CONTINUANCE" where, as can be seen in the upper left hand corner of **Exhibit 35**, attorneys Shindledecker and Post are listed as the attorney of record in that Probate case SPR 82302 where the first page also conspicuously states at lines 18 - 23;

"Objector, Edith M. Mazzaferri, Trustee of the MAZZAFERRI LIVING TRUST AS AMENDED AND RESTATED IN 2006 ("MAZZAFERRI TRUST"), hereby presents her Objection to Petition to Remove Trustee for Breach of Terms of the Trust and

Mazzaferro Lawsuit

38

Fiduciary Duty and Appoint a Bonded Professional Fiduciary to Act as Temporary Trustee; and Objection to Continuance, and in support of the Objections hereby states and alleges as follows:"

70.     Plaintiff believes and upon that belief states the foregoing demonstrates that Shea, Shindledecker and Post acted in violation of California Rules of Professional Conduct 3-310 and committed frauds upon the court by not disclosing their dual representation conflict of interest.

71.     In addition, **Exhibit A** attached to **Exhibit 34** is a September 11, 2009 letter to ANDERSON, ZEIGLER, DISHAROON, GALLAGHER and GREY titled "OBJECTION TO TRUSTEE FAILURE TO ACCOUNT AND TO BREACHES OF TRUST AND FIDUCIARY DUTY".

72.     Said **Exhibit A** attached to **Exhibit 34** shows in the upper right hand corner of the first page that it was received by ANDERSON, ZEIGLER, DISHAROON, GALLAGHER and GREY on September 15, 2009.

73.     Said **Exhibit A** attached to **Exhibit 34** indicates the 33 breaches of the trust listed therein were committed by Mazzaferri at a time when Mazzaferri was represented by dual representation conflict of interest conflicted attorneys Shea, Shindledecker and Post.

74.     Plaintiff believes and upon that belief states that as held in See *Morales v. Field., De Geoff, Hupert & MacGowan* 99 Cal. App. 3d 307 page 316 and *Potter v. Moran* (1966) 239 CA 2d 873, 878-879, when Shea acted as counsel for defendant Trustee Edith Mazzaferri he was assumed to have had the fiduciary responsibility to provide advice and guidance as to how the Trustee must act to fulfill her obligations to all beneficiaries and it therefore follows that when Shea undertook a relationship as adviser to the said Defendant Trustee Edith Mazzaferri, in reality he also assumed a relationship with all the beneficiaries to the Mazzaferri Trust akin

Mazzaferro Lawsuit

39

to that between that Trustee and all beneficiaries.

75.     As to proof that Defendant attorney Shea and former attorneys Shindledecker and Post colluded with Defendant Mazzaferri in the 33 breaches of trust listed in **Exhibit A** attached to **Exhibit 34**, page 4 of **Exhibit 35** at lines 12 - 14 states;

> "Objector is not a professional trustee, but has acted consistently in good faith and on the advice of counsel."

76.     Page 8 of **Exhibit 35** shows that Defendant Mazzaferri made the above statement under penalty of perjury.

77.     Plaintiff believes and upon that belief states that it is clear by **Exhibit 34** that Defendant Shea did not deny he colluded with Defendant Trustee Edith M. Mazzaferri in the 33 breaches of trust listed in **Exhibit A** attached to **Exhibit 34**.

78.     Plaintiff believes and upon that belief states the foregoing facts supported by **Exhibits** demonstrate Shea acted in a conflict of interest breach of California Rules of Professional Conduct 3-310 and breaches of the very terms of the Mazzaferri Living Trust that he created.

### Multi Representation Conflict of Interest of Defendant Lynn Searle
### And Her Fraud Upon The Federal and California Courts By Not Disclosing The Conflicts

79.     Plaintiff believes and upon that belief states the following demonstrates that Searle is acting in multi representational capacity conflict of interest that is fraud upon this Federal Court and California State Courts, in that, she is attorney for:

(a)     Edith Mazzaferri, William Parisi and Gina Parisi in Superior Court of California County of Sonoma Joshua Mazzaferri v, Edith Mazzaferri et. al. SCV 247296 where she is defending them against Breach of Trust;

(b)     Edith Mazzaferri in Superior Court of California County of Sonoma SPR 84785 where she is suing Mazzaferro on behalf of Edith Mazzaferri

Mazzaferro Lawsuit

40

Trustee of the MazZaferri Trust on an accounting petition:

(c) Edith Mazzaferri, William Parisi and Gina Parisi, the latter Gina Parisi being a beneficiary to the Mazzaferri Trust as is Mazzaferro, in Superior Court of California County of Sonoma SPR 84785 where she is also suing Mazzaferro on their behalf on a quiet title petition:

(d) Edith Mazzaferri, William Parisi and Gina Parisi, the latter Gina Parisi being a beneficiary to the Mazzaferri Trust as is Mazzaferro, in Superior Court of California County of Sonoma SPR 84785 where she is also suing Mazzaferro on their behalf on a Petition to Conform Trust:

(e) William Parisi v Mazzaferro et. al. Superior Court of California, County of San Francisco case PTR-05-286962 ( where Debtor Van Zandt is co-defendant with Mazzaferro);

(f) William Parisi as Conservator for the Estate of Lucia Fiorani in Superior Court of California, County of San Francisco case PCN-11-294956;

(g) Lucia Fiorani as Conservatee of the Estate of Lucia Fiorani in Superior Court of California, County of San Francisco case PCN-11-294956 wherein that same case Searle is attorney for the Conservator William Parisi, this is absolutely prohibited that Searle can represent both Conservator and Conservatee;

(h) United States Bankruptcy Court, Northern District of California Adversary Proceedings Parisi v Van Zandt 12-03184;

(i) United States Bankruptcy Court, Northern District of California Adversary Proceedings Parisi v Van Zandt 12-03184;

(j) United States District Court, Northern District of California Parisi v Van Zandt

Mazzaferro Lawsuit

41

case 4:13-cv-00702CW.

**Multi Representation Conflict of Interest of Defendant Russell Stanaland
And His Fraud Upon The Federal Courts By Not Disclosing The Conflicts**

80.     Plaintiff believes and upon that belief states that he believes the following demonstrates that Stanaland is acting in multi representational capacity conflict of interest that is fraud upon this Federal Court and California State Courts, in that, as reported to the IRS, he is both attorney and accountant for:

(a)     attorney and accountant for the Mazzaferri Family of which plaintiff Mazzaferro is the natural son of Edith Mazzaferri;

(b)     attorney and accountant for Edith Mazzaferri in Superior Court of California, County of San Francisco case CGC-10-500462;

(c)     attorney and accountant for Edith Mazzaferri in United States Bankruptcy Court, Northern District of California Adversary Proceedings Mazzaferri v Van Zandt 12-03183;

(d)     attorney and accountant for Edith Mazzaferri in United States District Court, Northern District of California Mazzaferri v Van Zandt 4:13-cv-01568 CW;

(e)     attorney and accountant for Edith Mazzaferri in United States District Court, Northern District of California Mazzaferri v Van Zandt 4:13-cv-O2765 CW;

(f)     attorney and accountant for Edith Mazzaferri in United States District Court, Northern District of California Mazzaferri v Van Zandt 4:13-cv-04200 CW;

81.     In February 2013 Mazzaferro recorded various instruments with the Lake County California Recorded and Sonoma County California Recorder to correct the false, fraudulent recordings created by conflicted   attorney William Shea.

Mazzaferro Lawsuit

42

82.   On February 27, 2013 defendants Searle, Parisi and Mazzaferri collectively made a false and fraudulent police report against Mazzaferro regarding the corrections Mazzaferro recorded that corrected Shea's false and fraudulent recordings.

83.   The false police report was collectively made by Searle, Parisi and Mazzaferri to Sonoma Police Officer Ken Johnson that resulted in Officer Johnson arresting Mazzaferro on May 22, 2013 on 9 felony charges that included Elder Abuse alleged to have been committed by Mazzaferro against Edith Mazzaferri.

84.   The criminal proceedings against Mazzaferro required a California Penal Code Section 136.2 hearing regarding a Criminal Protective Order ( CPO ) to issue against Mazzaferro if in fact Mazzaferro had engaged in the criminal activity alleged to be associated with the 9 felony charges that would have required the CPO.

85.   On June 18, 2013 a Criminal Protective Order ( CPO ) hearing was held wherein Edith Mazzaferri testified.

86.   **Exhibit 37** attached hereto is a true and correct copy of relevant portions of the Criminal Protective Order ( CPO ) transcript hearing held on June 18, 2013 which states the following on pages 4 lines 12-15; page 6 lines 27-28 to page 7 lines 1-28 and page 8 lines 1-13; page 25 lines 23-28 to page 26 lines 1-22; page 35 lines 26-28 to page 36 lines 1-28:

> **Page 4 lines 12-15 the D A States:**
>
> She's, since the death of her husband, been dealing the last five years with this litigation that has been started by the defendant and not -- she's continually the respondent in all of these cases, and she has ultimately ended in this criminal case.
>
> **Page 6 lines 27-28 Criminal Defense Attorney John LemMon states:**
>
> MR . LemMON : That ' s the current state of the order , and there's been no violations to date.

Mazzaferro Lawsuit

43

However, I do take great umbrage with something that madam prosecutor has said, and I would ask to do this under

### Page 7 lines 1-28 Defense attorney John LemMon continues:

penalty of perjury that my client has started all of this civil litigation.

We intend to present today, as an offer of proof, we have lawsuits that have been filed in San Francisco with the plaintiff being Edith Mazzaferri and the defendant being Ronald Mazzaferro, so he has to respond to this civil litigation . We have an unlawful detainer that was filed by Edith Mazzaferri. The defendant was Ronald Mazzaferro. We have a superior court matter of - - involving what's called the "Firoani Living Trust " where Edith Mazzaferri is the plaintiff and Ronald Mazzaferro is the defendant . We have other matters in Sonoma County as well indicating that Mr. Mazzaferro is the defendant in all of these civil matters.

So when madam prosecutor says that my client is harassing her victim by initiating lawsuits, that is absolutely 100 percent false, and I would ask the Court to take judicial notice of its own filings, including the civil files , where it will show that Edith Mazzaferri has elicited all of this litigation against Ronald Mazzaferro .

Unfortunately, this litigation is being funded by the very trust that Mr. Mazzaferro is trying to preserve with his actions that were undertaken in this matter.

And also it's our belief that the witnesses in this case , Gina Parisi and William Parisi, are influencing Edith Mazzaferri to undertake these actions because they are the recipients of the largess of the trust should it be manipulated the way it has been manipulated.

And, finally, I as an offer of proof would offer as a

### Page 8 lines 1-13 Defense attorney John LemMon continues:

part of that unlawful detainer action , which I had mentioned earlier which I asked the Court to take judicial notice of , Edith Mazzaferri has contacted her son Ron and asked him to perform certain things and to do certain things for her including meeting with an insurance agent to come to the location where they were to make an appointment so that they could talk about things .

He has only responded to his mother ' s request, and we have that request here in writing with the handwriting of Ms . Mazzaferri asking her son to perform these

Mazzaferro Lawsuit

44

things. This is a letter December 17th of 2012. This case was filed in May. I don't think there's going to be anything shown between December and May that has been harming, intimidation, or dissuasion, but that remains to be seen with the record.

**Page 25 lines 23-28:**

Q        Is it your understanding that if this criminal protective order is issued that the civil litigation will stop?

Q:        If the judge issues this order that you would like to have ordered today, a criminal protective order against your son--

**Page 26 lines 1-8 defense counsel John LemMon questions and the Court questions at lines 9-12 and Edith Mazzaferri answers at lines 13-15:**

A. Yes.

Q -- do you think that's going to stop the civil litigation that's taking place in other parts of this courthouse?

A Well, I think it should, yes.

Q Okay. Is that what you're trying to accomplish here?

A Well, that's a purpose why we're all here, absolutely.

Q Okay.

**THE COURT :** I'm sorry, ma'am. The criminal protective order you **wish** to issue **so** the civil **actions** stop in the other courts? Is that the reason that you want the criminal protective order?

**THE WITNESS :** Well, I think that's a good reason. I think it **would** be wonderful if the civil proceedings that have not proven anything would stop.
**Page 35 lines 26-28 the court states:**

**THE COURT :** I do have one issue, and maybe you cannot answer this question and I asked it myself after Mr. LemMon did. I don't know what is going on with any of the civil lawsuits.

**Page 36 lines 1-10 the Court continues:**

Apparently there are civil lawsuits here in Sonoma County and outside the county as well?

Mazzaferro Lawsuit

45

**MR. LemMON :** Yes .

**THE COURT :** And it's all news to me, of course. But I was concerned about the issue has anyone that you know of told them that a criminal protective order would somehow stop the civil action as the victim testified to? I think it's quite clear that she believes based on what I heard that if a criminal protective order was signed and issued that that would stop the civil lawsuits from proceeding.

**MS . BROWN:** I certainly haven't told her that . No one from my office to my knowledge has told her that . I don't know if anyone else has told her that. When we left the court , I immediately advised her , "Edith , you know this is a criminal protective order. This doesn't have anything to do with your civil matter, and it's not going to stop those matters from going forward."

And she said, "Oh , okay. "

I don't know if anyone has ever said that to her.
She's never said that to me that that was the reasoning why she wanted it.

The reasoning she gave me was simply that she needs peace of mind, that she ' s been going through this for five years and it's a course of conduct that ' s led to the point where she wants him to leave her alone. And I think in her words what she meant was that she just wants it all to stop and thought that the criminal protective order would be a vehicle to stop some of it but not all of it.

87.     The above transcript excerpts show that Edith Mazzaferri believes that Mazzaferro is suing her in Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California, County of Sonoma cases SPR 84785, *and that she wants those litigations to stop, which his exactly consistent with what she told Mazzaferro at the 4 hour and 45 minute meeting between them on October 7, 2012.*

88.     On October 3, 2013 Sonoma County D. A. Robin Hammond met with Edith Mazzaferri *without* Paris, Searle or Stanaland present.

89.     ***On October 4, 2013 Sonoma County California District Attorney Robin Hamond dismissed the entire criminal proceedings against Mazzaferro, before any preliminary hearing.***

90.     It was discovered during Mazzaferro's criminal prosecution that Searle, Parisi and Mazzaferro Lawsuit

46

Mazzaferri made false statements to the police and that **_Searle herself_** prepared false, fraudulent and incomplete documents for Edith Mazzaferri to provide to the Sonoma County District Attorney and that no probable cause had existed for Mazzaferro to have been arrested and that he committed no crime.

91.    Stanaland was fully aware of the false and fraudulent criminal prosecution of Mazzaferro because while Mazzaferro was waiting in the hall of Superior Court of California, County of Sonoma for a criminal hearing Stanaland had Mazzaferro served with an Order Of Examination subpoena to appear on July 11, 2013, thus indicating coordination with Searle and Parisi who had made the false fraudulent police reports that got Mazzaferro falsely arrested, falsely imprisoned and falsely and maliciously criminally prosecuted.

92.    Plaintiff believes and upon that belief states logic militates that Stanaland, Parisi and Searle have duplicitously exercised financial elder abuse control over Edith Mazzaferri for the purpose to gain control and drain all assets of the Mazzaferri Trust and to falsely and fraudulently induce Edith Mazzaferri that said draining of Mazzaferri Trust assets is for her, Mazzaferri, to defend herself in lawsuits they, Stanaland and Searle acting on behalf of and for Parisi, know she is the plaintiff and not the defendant, and by such coercive control they have also convinced Mazzaferri that she is a defendant in the litigations and that Mazzaferro is the plaintiff suing her in those litigations.

93.    Plaintiff believes and upon that belief states that the draining of assets from the Mazzaferri Trust being committed by Stanaland, Parisi and Searle is being done in collusion with Missouri resident convicted felon embezzler Mansuetto Anthony Lenci and constitutes financial elder abuse of Mazzaferro as a beneficiary of the Mazzaferri Trust in violation of California Welfare and Institutions Code Section 15610.30 (a) (1) & (2) , (b) and (c), the latter

Mazzaferro Lawsuit

47

(c) regarding the assets of the Mazzaferri Trust that were bequeathed to Mazzaferro that are being drained by Searle, Parisi, Stanaland and their cohort convicted felon embezzler Mansuetto Anthony Lenci.

94.     **Exhibit 38** attached hereto contains relevant parts of Court Reporter Transcript showing on page 31 lines 15 - 17 that on April 2, 2013 Searle testified in a hearing in Superior Court of California County of Sonoma case MCV 22784 that Parisi holds Power of Attorney for Edith Mazzaferri to assist Mazzaferri in lawsuits.

95.     Plaintiff believes and upon that belief states that because the foregoing demonstrates Edith Mazzaferri has been duped, tricked and fooled by Stanaland, Searle and Parisi into believing Mazzaferro is suing her in Superior Court of California, County of San Francisco cases CGC-10-500462 and PTR-05-286962 and Superior Court of California County of Sonoma, SPR 84785 and that Searle testified that Parisi holds Power of Attorney for Edith Mazzaferri to assist her with litigation, logic militates Edith Mazzaferri is not the real party in interest in Superior Court of California, County of San Francisco case CGC-10-500462 or in United States Bankruptcy Court, Northern District of California, San Francisco Division Adversary Proceedings 12-03183 and that both lawsuits are frauds upon the respective courts wherein they are filed.

96.     Plaintiff believes and upon that belief states that **Exhibit 39** attached hereto was authored by Stanaland whose photo is affixed advertising Asset Protection Trusts being available from various states, including the state of Missouri that allow unilateral changing of beneficiaries to irrevocable trust.

97.     As herein above stated in paragraph 18, Mazzaferro obtained FOIA from the Internal Revenue Service showing Stanaland's direct association with convicted felon embezzler

Mazzaferro Lawsuit

48